# 26-263-cv

## United States Court of Appeals

*for the*

## Second Circuit

CORY EPPS,

*Plaintiff-Appellee,*

v.

CITY OF BUFFALO, DETECTIVE MARK STAMBACH, DETECTIVE JAMES GIARDINA, MARK R. COSTANTINO, Executor of the Estate of Anthony Costantino,

*Defendants-Appellants,*

DETECTIVE JOHN BOHEN, DETECTIVE REGINALD MINOR, DETECTIVE ROBERT CHELLA, DETECTIVE RANIERO MASECCHIA, DETECTIVE CHARLES ARONICA, CHIEF JOSEPH RIGA,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

# REPLY BRIEF FOR DEFENDANTS-APPELLANTS

HUGH M. RUSS III
CHEYENNE N. FREELY
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

DAVID J. PANZARELLA
HODGSON RUSS LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

*Attorneys for Defendants-Appellants*

COUNSEL PRESS (800) 4-APPEAL • (515791)

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS .........................................................................2

ARGUMENT ..............................................................................................2

POINT I. THE QUALIFIED IMMUNITY DOCTRINE REQUIRES THIS COURT TO ANALYZE WHETHER A *BRADY* VIOLATION OCCURRED ..................................................3

A. This Court Has Jurisdiction Over the *Brady* Inquiry..................3

B. There is No Evidence that the Defendant Detectives Intentionally Suppressed Anderson's Alleged Statement...........5

C. Anderson's Alleged Statement Is Not Material..........................7

POINT II. THE DEFENDANT DETECTIVES ARE PROTECTED BY QUALIFIED IMMUNITY..................................................11

A. The Defendant Detectives Did Not Violate Clearly Established Law. ........................................................11

B. The Defendant Detectives' Conduct was Objectively Reasonable. ...............................................................15

CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Arbeeny v. Cuomo*,
2025 WL 3079217 (2d Cir. Nov. 4, 2025) ....................12

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ....................4

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ....................15

*Brady v. Maryland*,
373 U.S. 83 (1963) ....................12

*Carvajal v. Dominguez*,
542 F.3d 561 (7th Cir. 2008) ....................4

*Chambers v. Mississippi*,
410 U.S. 284 (1973) ....................8, 9

*Clark v. Valletta*,
157 F.4th 201 (2d Cir. 2025) ....................15

*Clubside, Inc. v. Valentin*,
468 F.3d 144 (2d Cir. 2006) ....................3, 4

*Giglio v. U.S.*,
405 U.S. 150 (1972) ....................12, 13

*Gould v. Davis*,
165 F.3d 265 (4th Cir. 1998) ....................16

*Grant v. Alldredge*,
498 F.2d 376 (2d Cir. 1974) ....................12, 16

*Harwe v. Floyd*,
545 F. App'x 20 (2d Cir. 2013) ....................3

*Horn v. Stephenson*,
11 F.4th 163 (2d Cir. 2021) ....................13

## TABLE OF AUTHORITIES - cont'd

PAGE

*Jiminez v. City of N.Y.*,
2025 WL 935233 (S.D.N.Y. Mar. 27, 2025)....................................................4

*Jin v. City of N.Y.*,
169 F.4th 373 (2d Cir. 2026) .........................................................................7

*Kisela v. Hughes*,
584 U.S. 100 (2018)........................................................................... 11, 15

*Kyles v. Whitley*,
514 U.S. 419 (1995)........................................................................ 4, 12, 13

*Luna v. Pico*,
356 F.3d 481 (2d Cir. 2004) ..........................................................................3

*Manganiello v. City of N.Y.*,
612 F.3d 149 (2d Cir. 2010) ..........................................................................5

*Massimo v. Benoit*,
--- F.4th ---, 2026 WL 2386308 (2d Cir. Aug. 17, 2026) ..................................3

*Matusak v. Daminski*,
165 F.4th 702 (2d Cir. 2026) ....................................................................3, 11

*McColley v. Cnty. of Rensselaer*,
740 F.3d 817 (2d Cir. 2014) ..........................................................................7

*McGhee v. Annucci*,
2024 WL 36998 (S.D.N.Y. Jan. 3, 2024),
*aff'd sub nom McGhee v. Martuscello*,
2024 WL 4891270 (2d Cir. Nov. 26, 2024) ....................................................10

*McKinney v. City of Middletown*,
49 F.4th 730 (2d Cir. 2022) ..........................................................................11

*McMillian v. Johnson*,
88 F.3d 1554 (11th Cir. 1996) ........................................................................4

*Pearson v. Callahan*,
555 U.S. 223 (2009)...........................................................................................2

**TABLE OF AUTHORITIES - cont'd**

PAGE

*People v. Robinson*,
89 N.Y.2d 648 (1997) .......... 8, 9

*Saucier v. Katz*,
533 U.S. 194 (2001) .......... 2, 3

*Strickler v. Greene*,
527 U.S. 263 (1999) .......... 4, 7

*U.S. v. Bagley*,
473 U.S. 667 (1985) .......... 12, 13

*U.S. v. Miller*,
411 F.2d 825 (2d Cir. 1969) .......... 12, 13

*U.S. v. Payne*,
63 F.3d 1200 (2d Cir. 1995) .......... 9

*U.S. v. Polisi*,
416 F.2d 573 (2d Cir. 1969) .......... 12

*U.S. v. Rodriguez*,
503 F. App'x 72 (2d Cir. 2012) .......... 8

*U.S. v. Santos*,
2010 WL 2985913 (E.D.N.Y. July 27, 2010) .......... 8

*Valentin v. City of Rochester*,
2018 WL 5281799 (W.D.N.Y. Oct. 24, 2018) .......... 4

*Vintero Corp. v. Corporacion Venezolana de Fomento*,
675 F.2d 513 (2d Cir. 1982) .......... 6

*Walker v. City of N.Y.*,
974 F.2d 293 (2d Cir. 1992) .......... 9, 12, 13, 16

*Wood v. Bartholomew*,
516 U.S. 1 (1995) .......... 10-12, 14, 15

*Zorn v. Linton*,
607 U.S. ---, 146 S.Ct. 926 (2026) .......... 12, 14

**PRELIMINARY STATEMENT**

In his responding brief, Plaintiff advances one basic argument: the Defendant Detectives failed to limit their appeal to the issue of qualified immunity. Perhaps deliberately, Plaintiff misses the point. Qualified immunity cannot be granted or denied in a vacuum. In order to assess whether qualified immunity applies in a particular case, the reviewing court must examine the full circumstances of the encounter. Plaintiff endeavors to limit the inquiry to one general proposition: must the police produce *Brady* material? Calling qualified immunity "straightforward" (Dkt. No. 43.1 at 8), he disregards the nuanced factual background underlying the issues and ignores the development of the case law since 1998. When faced with the unique circumstances surrounding the alleged hearsay confession, made nearly 30 years ago, the Court will find that the Defendant Detectives acted appropriately. The Second Circuit must reverse the District Court and deem the Detectives entitled to qualified immunity.

As this Court noted, the qualified immunity doctrine is multi-faceted. Plaintiff asks the Court to abandon a key facet of that doctrine. Qualified immunity requires the Court to determine whether a constitutional violation occurred. As required, the Defendants' brief analyzed this issue, while Plaintiff argues the issue exceeds this Court's interlocutory jurisdiction. The doctrine also

requires the Court to analyze whether a clearly established right existed at the time of the alleged violation. The Defendants' brief performed this analysis. Finally, even if a clearly established right existed, the Court must also analyze whether it was objectively reasonable for the Detectives to believe they were not violating it. The Defendants' brief provided that analysis. Plaintiff instead urges a version of the qualified immunity doctrine that favors his position even though it does not exist in this Circuit. This Court should reject Plaintiff's flawed qualified immunity analysis and reverse the District Court's mistaken qualified immunity determination.

## STATEMENT OF FACTS

Defendants included the relevant facts in their principal brief. Certain facts are repeated here only for purposes of argument.

## ARGUMENT

The United States Supreme Court has established a two-pronged test governing the qualified immunity determination. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 200 (2001).[1] The first prong

[1] As held in *Pearson* and recognized by the District Court, courts have the discretion to decide the order in which they decide the prongs of this test. *See* SPA-11-12 (citing *Pearson*, 555 U.S. at 236).

asks whether the facts establish a violation of a constitutional right; the second asks whether the officer is nonetheless protected by qualified immunity. *See, e.g.*, *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citing *Saucier*, 533 U.S. at 201).

## POINT I. THE QUALIFIED IMMUNITY DOCTRINE REQUIRES THIS COURT TO ANALYZE WHETHER A *BRADY* VIOLATION OCCURRED

### A. This Court Has Jurisdiction Over the *Brady* Inquiry.

Whether a *Brady* violation occurred is not a "collateral" issue—it is a direct element of the qualified immunity analysis itself. Determining whether officers violated a constitutional right constitutes one of the prongs of the qualified immunity analysis. *See, e.g.*, *Massimo v. Benoit*, --- F.4th ---, 2026 WL 2386308, at *2 (2d Cir. Aug. 17, 2026); *Luna*, 356 F.3d at 487. This Circuit routinely considers whether constitutional violations occurred as part of interlocutory appeals on qualified immunity. *See, e.g.*, *Clubside, Inc. v. Valentin*, 468 F.3d 144, 151-152 (2d Cir. 2006); *Harwe v. Floyd*, 545 F. App'x 20, 21 (2d Cir. 2013); *see also Matusak v. Daminski*, 165 F.4th 702, 712 (2d Cir. 2026).

Here, the *Brady* inquiry requires the Court to analyze whether Anderson's Alleged Statement was "material", and whether the officers acted in bad faith by not disclosing it. *See Valentin v. City of Rochester*, 2018 WL

5281799, at *12-13 (W.D.N.Y. Oct. 24, 2018) (citing *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999)). Plaintiff's argument that materiality and intentionality have "no connection" to the qualified immunity analysis could not be more wrong. Contrary to Plaintiff's contention, sister circuits have specifically followed the same approach—determining whether a *Brady* violation occurred, including materiality, in their qualified immunity analyses. *See Carvajal v. Dominguez*, 542 F.3d 561, 566-569 (7th Cir. 2008); *McMillian v. Johnson*, 88 F.3d 1554, 1567-1570 (11th Cir. 1996).

Additionally, Plaintiff's bad faith argument applies the inappropriate criminal *Brady* standard, rather than the relevant civil one. *See* Dkt. No. 43.1 at 53-54 (citing *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (criminal appeal); *Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995) (criminal appeal)). But "a police officer is only [civilly] liable for *Brady* violations under § 1983 when he intentionally suppresses exculpatory evidence . . ." *Valentin*, 2018 WL 5281799, at *13; *see also Jiminez v. City of N.Y.*, 2025 WL 935233, at *17 (S.D.N.Y. Mar. 27, 2025). Despite Plaintiff's irresponsible claims, the Court has jurisdiction to analyze whether a *Brady* violation, and thus the elements of a § 1983 *Brady* claim, occurred under the collateral order doctrine.

**B. <u>There is No Evidence that the Defendant Detectives Intentionally Suppressed Anderson's Alleged Statement.</u>**

Assuming, as we must, for the sake of this appeal, that Anderson made the Alleged Statement, there is no evidence that the Defendant Detectives intentionally suppressed it. The record establishes, at most, that while investigating a separate murder, the Defendant Detectives received Anderson's Alleged Statement. *See* A-352, 357-367, 894-897. Whether Anderson made the Statement to Detectives before Plaintiff's trial is a separate question different from whether, if made, the Detectives intentionally suppressed it from the prosecution—an inquiry for which there is no evidence.

In the absence of evidence, Plaintiff attempts to imply that the Defendant Detectives lied, likening this case to *Manganiello v. City of N.Y.*, 612 F.3d 149, 162 (2d Cir. 2010). These attempts are futile. Plaintiff first argues that the Defendant Detectives' 2001 denials that Anderson made the Alleged Statement could be used to infer they intentionally suppressed the Statement in 1998. This suggestion is entirely speculative and unsupported by any evidence.[2] Even if the

---

[2] *Manganiello* does not support Plaintiff's position. In that case, the Court noted that where there is some indication *in the police records* that arresting officers lied to secure an indictment, a jury could find bad faith. *Manganiello*, 612 F.3d at 162. Here, Plaintiff does not and cannot point to anything in the police records indicating that the Defendant Detectives lied. In fact, the police records show the opposite. As pointed out by Magistrate Judge Foschio, the police records show that Anderson's written statement,

Detectives did lie at the 2001 hearing (where the Judge deemed them credible), that does not equate to evidence of intentional suppression in 1998.

Plaintiff's arguments regarding whether the Detectives were investigating Epps while investigating the Paul Pope murder misunderstand the Defendant Detectives' position. The Defendant Detectives did not intentionally withhold Anderson's Alleged Statement, because they were not investigating Epps, whose trial was only days away—they were investigating the separate homicide of Paul Pope.[3] The Defendant Detectives did *not* argue that they did not *know* about the Epps trial, but rather they contended that their investigative focus was on the Pope murder during Anderson's interview. There is simply no evidence of intentional suppression in Plaintiff's case.

---

which does not mention Epps or Means, was signed by Anderson. A-1107-1108. Anderson's admitted execution of the Signed Statement, without any reference to Epps or Means from her Alleged Statement, cuts against the unsupported notion that the Defendant Detectives intentionally suppressed her Alleged Statement.

[3] Plaintiff asks this Court to disregard this argument based on waiver, but "[a]rguments made on appeal need not be identical to those made below . . . if the elements of the claim were set forth and additional findings of fact are not required." *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir. 1982) (citations omitted). The Defendant Detectives presented the facts to the District Court, (A-1248-A-1251), and they are undisputed (A-2932 No. 41.D).

### C. Anderson's Alleged Statement Is Not Material.

Plaintiff's attempt to prevent the Court from adjudicating this issue is unpersuasive. This Court may resolve the materiality question on interlocutory appeal, because it does not require resolution of disputed facts. *See Jin v. City of N.Y.*, 169 F.4th 373, 379 (2d Cir. 2026).

*McColley v. Cnty. of Rensselaer*, 740 F.3d 817 (2d Cir. 2014), is inapposite. That case involved a factual dispute about what omissions in an affidavit would have shown if corrected. *Id.* at 826. Here, for the sake of this appeal, the underlying facts about the Alleged Statement's content and the unavailability of any corroborating witness are undisputed. *See* A-2932, Nos. 41.D, 42.D; A-2933, No. 46.D. The only dispute is whether it is legally material, a question this Court can resolve.

Plaintiff "must convince [the Court] that there is a reasonable probability that the result of the trial would have been different if the [Alleged Statement] had been disclosed to the defense." *See Strickler*, 527 U.S. at 289. Plaintiff's argument that this standard is somehow incorrect fails. Plaintiff cannot meet this standard, because the undisputed circumstances defeat materiality:

- The Alleged Statement was inadmissible, not based on Anderson's personal knowledge, and not capable of being

confirmed by a viable source, *see* A-700-701, 894-897, 1107-1108;

- Paul Pope, the only source who could have confirmed the alleged admission was dead, A-352, 357-367;
- Russell Montgomery had no incentive to cooperate since he was under investigation for the Pope murder;
- The sole eyewitness—Jacqueline Bradley—twice identified Epps. When later shown a photo of Montgomery, Bradley stated she had never seen him before, *see* A-209-210, 600:14-601:9, 986-987, 756:9-757:11;
- Anderson acknowledged that Montgomery and Plaintiff look alike, A-713:10-12, A-714:18-20;
- The jury convicted Epps despite hearing his full alibi defense, *see* A-86, 1517:8-1519:8.

*See U.S. v. Santos*, 2010 WL 2985913, at *8 (E.D.N.Y. July 27, 2010) (holding that nondisclosure of informant's statement was not a *Brady* violation where the statement, among other things, was inadmissible hearsay that would not have led to admissible evidence); *see also U.S. v. Rodriguez*, 503 F. App'x 72, 75 (2d Cir. 2012).

Though Plaintiff argues Anderson's Alleged Statement would have been admissible despite its hearsay character, that argument lacks any merit. Plaintiff cites two decisions, *Chambers v. Mississippi*, 410 U.S. 284 (1973) and *People v. Robinson*, 89 N.Y.2d 648 (1997), but neither case supports it. *See* Dkt.

No. 43.1 at 44-46. Both involved declarations against penal interest with substantial, independent indicia of reliability—including corroboration confirming the statements were made. *See Chambers*, 410 U.S. at 300-301; *Robinson*, 89 N.Y.2d at 654-656. No such indicia exist here. Anderson's Alleged Statement is hardly a candidate for the narrow *Chambers* and *Robinson* hearsay exception.

Plaintiff's remaining arguments as to materiality similarly fall short. Plaintiff argues that the materiality inquiry here is essentially trumped by *Walker v. City of N.Y.*, 974 F.2d 293 (2d Cir. 1992) and progeny, which hold that police must turn over *Brady* evidence, which is evidence favorable to the defense. Dkt. No. 43.1 at 57. But *Walker* does not answer whether the Alleged Statement is material such that it could be *Brady* evidence. And *Walker's* holding is much too general—police must disclose *Brady* evidence. If that were the standard, qualified immunity would never be granted.

*U.S. v. Payne*, 63 F.3d 1200 (2d Cir. 1995) does not support Plaintiff's argument, either. There, the suppressed evidence was competent, admissible impeachment material that could be weighed by the jury. *Id.* at 1210. Anderson's Alleged Statement is nothing like that—it is inadmissible double hearsay, several levels removed from any firsthand witness. Unlike in *Payne*, there is nothing in

the Alleged Statement that could have led to any admissible evidence the jury could have weighed.

Finally, Plaintiff argues that the record answers the materiality question by including (1) trial counsel's account of how he would have used the Statement; (2) the state court's 2001 decision to hold an evidentiary hearing; (3) the Detectives' allegedly false testimony about the timing of Anderson's Alleged Statement; and (4) Epps's ultimate exoneration. Dkt. No. 43.1 at 58-59. None of these points rises beyond the kind of speculation this Court and the Supreme Court have deemed insufficient to establish materiality. *See Wood v. Bartholomew*, 516 U.S. 1, 7-8 (1995); *McGhee v. Annucci*, 2024 WL 36998, at *6 (S.D.N.Y. Jan. 3, 2024), *aff'd sub nom McGhee v. Martuscello*, 2024 WL 4891270 (2d Cir. Nov. 26, 2024) ("mere speculation about the effects of undisclosed evidence does not provide a basis for materiality").

Given these circumstances, Anderson's Alleged Statement was not material and, therefore, not subject to *Brady*. Even under Plaintiff's version of the facts, there was no *Brady* violation.

## POINT II. <u>THE DEFENDANT DETECTIVES ARE PROTECTED BY QUALIFIED IMMUNITY</u>

### A. <u>The Defendant Detectives Did Not Violate Clearly Established Law.</u>

The "clearly established" inquiry "focuses on the specific factual situation the officers confronted, and the defendants will be entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *See McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022) (internal quotations omitted) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)); *Matusak*, 165 F.4th at 712-713. Everyone can agree that in 1998, *Brady* material had to be disclosed. But that is not the question here. The question is was it clearly established that with this evidence and under these circumstances, the Alleged Statement (assuming it was made) needed to be disclosed? The answer should have been a resounding "no."

In 1998, no Second Circuit or Supreme Court precedent clearly established, with the required particularity, that the Defendant Detectives, while working on an unrelated homicide investigation, were obligated to recognize and forward unconfirmable, inadmissible hearsay to the prosecution team in the Epps case. One case, in fact, established the opposite. In *Wood*, the leading case in effect at the time of the Epps investigation and trial, the Supreme Court held that

inadmissible polygraph evidence did not constitute *Brady* material. 516 U.S. at 8. Therefore, following *Wood*, the Defendant Detectives would be entitled to qualified immunity.

The "clearly established right" adopted by the District Court and proffered by Plaintiff—that favorable evidence must be disclosed—is "articulated at too high a level of generality for qualified immunity purposes." *See Arbeeny v. Cuomo*, 2025 WL 3079217, at *3 (2d Cir. Nov. 4, 2025) (holding plaintiffs' rights were not clearly established as they were defined too broadly and rely on cases involving very different facts). Neither the District Court nor Plaintiff "identify a case where an officer taking similar actions in similar circumstances was held to have violated the Constitution." *See Zorn v. Linton*, 607 U.S. ---, 146 S.Ct. 926, 931 (2026).

Plaintiff's arguments to the contrary rest on general propositions about *Brady*'s scope. Every case Plaintiff cites—*Polisi*, *Bonanno*, *Walker*, *Brady*, *Giglio*, *Bagley*, *Kyles*, *Miller*, and *Alldredge*—is factually distinct from the circumstances here and addresses only the general proposition that favorable evidence must be disclosed to the defense.[4] None of these cases addresses the

---

[4] *U.S. v. Polisi*, 416 F.2d 573, 577-578 (2d Cir. 1969) (prosecution violated *Brady*'s requirement to disclose evidence material to guilt where they failed to disclose co-

specific facts at issue here or even any analogous set of circumstances. Their discussions lack the nuance required for this case and the District Court erred in using such general propositions to deny qualified immunity. The mere fact that this Court clarified the *Walker* holding nearly thirty years later in *Horn v. Stephenson*, 11 F.4th 163, 171 (2d Cir. 2021) shows that the issue was not "beyond debate," at the time. Similarly, at most, Plaintiff's cited cases establish that

---

defendant's conflicting confession regarding defendant's role in robbery); *U.S. v. Bonanno*, 430 F.2d 1060, 1062-1063 (2d Cir. 1970) (prosecution violated *Brady* where they failed to disclose known indictment against government's witness); *Walker*, 974 F.2d at 298-299 (dismissing *Brady* cause of action against police where plaintiff alleged witnesses' prior false statements and failure to identify plaintiff were not disclosed to the defense but also alleged police turned over all exculpatory evidence to the prosecution. The Court held police satisfy their *Brady* obligations when they turn over exculpatory evidence to the prosecution); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (". . . the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . ."); *Giglio v. U.S.*, 405 U.S. 150, 153-154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [*Brady*].") (internal quotations omitted); *U.S. v. Bagley*, 473 U.S. 667, 676 (1985) (prosecution violated *Brady* where they failed to disclose evidence the defense might have used to impeach government's witnesses through bias or interest because such evidence is "evidence favorable to an accused,"); *Kyles*, 514 U.S. at 441-447 (prosecution's failure to disclose eyewitness statements that contained inconsistencies internally and with the prosecution's case violated *Brady* because they could have cast doubt on the reliability of the investigation or sullied the credibility of one of the detectives); *U.S. v. Miller*, 411 F.2d 825, 832 (2d Cir. 1969) (prosecution violated *Brady* where the government's case was already "subject to serious attack," and there was a significant chance that disclosure of government witness's hypnosis, "developed by skilled counsel" would have produced reasonable doubt); *Grant v. Alldredge*, 498 F.2d 376, 380, 382 (2d Cir. 1974) (prosecution violated *Brady* where they failed to disclose that their eyewitness identified a different suspect and said suspect had other "significant coincidences" related to the bank robbery because the evidence was specific and concrete).

admissibility is not dispositive of the *Brady* obligation. They do not address the circumstances present here with any of the particularity necessary.

This deficiency is fatal to Plaintiff's position. In *Zorn*, the Supreme Court rejected the use of a general principle to deny officers qualified immunity, where officers used a rear-wristlock procedure on the protestor plaintiff who was passively resisting. 146 S.Ct. at 931. The plaintiff claimed excessive force in violation of her Fourth Amendment rights. *Id.* This Court denied qualified immunity, finding that prior precedent established that the gratuitous use of pain compliance techniques constituted excessive force. *Id.* The Supreme Court reversed, holding that the general principle lacked the specificity needed to make clear to officers which actions violate the law. *Id.* The same rationale applies here: the general principle that Defendant Detectives should disclose favorable evidence to the prosecution does not defeat qualified immunity in these unique circumstances.

Finally, Plaintiff misunderstands the Defendants' reference to *Wood*. Although not addressing the same facts at issue here, *Wood* was the *closest* decision in 1998 to address whether inadmissible evidence that would not have directly affected the trial was *Brady* material. In similar circumstances, *Wood* did

not find a *Brady* violation. *Wood* demonstrates that, the issue was not clearly established in 1998, and the Defendant Detectives are entitled to qualified immunity.

**B. <u>The Defendant Detectives' Conduct was Objectively Reasonable.</u>**

Although Plaintiff accuses the Defendants of "mixing the clearly established law and reasonableness prongs," the opposite is actually true. *See* Dkt. No. 43.1 at 47-48. Conduct is "objectively reasonable" unless "every reasonable official would have understood that what he is doing" violated clearly established law. *See Clark v. Valletta*, 157 F.4th 201, 216 (2d Cir. 2025) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Reasonableness is judged from the perspective of a reasonable officer at the time of the alleged conduct, not with a 20/20 hindsight view nearly 30 years later. *Kisela*, 584 U.S. at 103.

At the time, reasonable officers could disagree as to whether Anderson's inadmissible Alleged Statement would undermine Epps's conviction or lead to the discovery of admissible evidence that would do so. That Magistrate Judge Foschio and District Judge Vilardo disagreed on whether the Defendant Detectives' conduct violated clearly established law only emphasizes that not every reasonable detective would have known failing to disclose Anderson's

Alleged Statement violated clearly established law. *Compare* SPA-14-19 *with* A-3081-3083. In 1998, it was not clear how *Walker* applied here, because the case does not specifically address inadmissible, non-exculpatory evidence.

In one breath, Plaintiff accuses the Defendants of "mixing the clearly established law and reasonableness prongs;" in the next, Plaintiff collapses the two by arguing that because the law was clearly established, the officers' actions were inherently unreasonable. In support, Plaintiff cites *Gould v. Davis*, 165 F.3d 265, 273 (4th Cir. 1998), holding that where a right is "well-defined" and "fact-specific," objective reasonableness is "easy to resolve." Plaintiff provides no Second Circuit precedent for this proposition. Even if this out-of-circuit, non-binding case were to be considered, which it should not be, it is inapplicable.

Unlike in *Gould*, neither the District Court nor Plaintiff identified a well-defined or fact-specific clearly established right; both refer only to the general proposition that favorable evidence must be turned over. *See* SPA-14-19; Dkt. No. 43.1 at 47. In *Gould*, the defendant officers did not even argue their actions were objectively reasonable and they were therefore denied qualified immunity. 165 F.3d at 273. That cannot be said here, where the Defendant Detectives have argued and demonstrated the objective reasonableness of their actions.

Contrary to Plaintiff's alarmist view, granting the Defendant Detectives qualified immunity would not expand the doctrine's boundaries—it would bring this case in line with well-settled Second Circuit precedent. Just as the Magistrate Judge and the District Court Judge disagreed, reasonable officers would disagree as to whether the Defendant Detectives violated a clearly established right in 1998. Therefore, the Defendant Detectives' conduct was objectively reasonable, and they are entitled to qualified immunity.

## CONCLUSION

For these compelling reasons, the Court should reverse the District Court's decision and hold that the Defendant Detectives are entitled to qualified immunity.

Dated: September 3, 2026

**HODGSON RUSS LLP**
*Attorneys for Defendants-Appellants Detective Mark Stambach, Detective James Giardina, Mark R. Costantino, as Executor of the Estate of Anthony Costantino*

By: /s/ Hugh M. Russ III
Hugh M. Russ III, Esq.
David Panzarella, Esq.
Cheyenne N. Freely, Esq.
The Guaranty Building

140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
716.856.4000
*hruss@hodgsonruss.com*
*dpanzarella@hodgsonruss.com*
*cfreely@hodgsonruss.com*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,602 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

By: /s/ Hugh M. Russ III
Hugh M. Russ